Rubio et al., Demandantes y Apelantes, *v.* Garage Mayagüez, Inc., Demandada y Apelada.

Apelación procedente de la Corte de Distrito de Mayagüez en causa sobre daños y perjuicios.

No. 1361.—Resuelto en marzo 14, 1916.

Alegaciones—Afirmaciones Contenidas en una Alegación.—Lo que se afirma en una alegación debe considerarse en el sentido más estricto en contra del que la formula.

Negligencia—Automóvil—Transporte—Porteadores Públicos.—Cuando en una demanda por negligencia en conducir un automóvil, se alega un contrato especial de transporte, sin que exista alegación de que el demandado era un porteador público, la tentativa de la demanda de impugnar actos específicos de negligencia milita en contra de la teoría sobre porteadores públicos.

Id.—Alquileres—Garages de Automóvil—Empresarios de Coches—Responsabilidad del Porteador—Cuidado Ordinario.—Cuando el contrato consiste en la entrega ordinaria de una cosa en alquiler *(bailment for hire),* como sucede generalmente con los garages de automóviles y empresarios de coches, la responsabilidad del porteador consiste en tener un cuidado ordinario.

Id.—Porteadores Públicos—Grado de Cuidado—Res Ipsa Loquitur.—Cuando el porteador es un ferrocarril, tranvía urbano, buque de vapor, diligencia, o persona dedicada al servicio público, que se ofrece a recibir a todo el que se presenta, se requiere mayor grado de cuidado, y frecuentemente es aplicada la máxima de *res ipsa loquitur,* por la teoría de que teniendo dichos porteadores el gobierno y conociendo el mecanismo del aparato y el camino, están en condiciones de poder dar cuenta del accidente, y por tanto la ley le *impone* el deber de tener tal conocimiento.

Id.—Chauffeur—Automóvil Tomado en Alquiler—Cansancio—Negligencia Contributoria.—Aun cuando la prueba demuestre un acto de negligencia por parte del *chauffeur* en continuar un viaje cuando ya estaba agotado, y el cual fué la causa eficiente del accidente, si el pasajero exige al *chauffeur* que continúe el viaje emprendido a pesar de hallarse éste agotado en sus fuerzas y rendido por el sueño por haber tenido poco descanso debido a la insistencia del pasajero, éste es también culpable de negligencia contributoria.

Testigos Peritos—Preguntas Hipotéticas—Hechos Probados en el Juicio—Impugnaciones.—Una pregunta dirigida a un testigo presentado como perito queda sujeta a ser impugnada cuando no se acredita que el testigo sea tal perito ni ella expresa hechos concretos probados en el juicio en forma hipotética que hagan procedente la opinión del perito.

Testigos — Manifestaciones Incompatibles — Objeto de la Pregunta. — Una parte tiene derecho a contradecir su propio testigo de acuerdo con el artículo 156 de la Ley de Evidencia, pero debe hacer constar claramente el objeto de la pregunta al indicar al testigo los detalles de sus manifestaciones anteriores que se alega son incompatibles.

Id.—Admisiones Hechas por un Empleado del Demandado—Excepción a la Regla — Prueba de Referencia — Prueba Acumulativa. — Las admisiones hechas por un empleado de un demandado son pertinentes y competentes, y constituyen una excepción a la regla relativa a las declaraciones de referencia, aún cuando el empleado esté en la corte dispuesto a declarar, pero debe demostrarse que la declaración propuesta es esencial y pertinente a las cuestiones alegadas en la demanda.

Errores—Perjuicio—Apelación—Deber del Apelante.—De acuerdo con el artículo 142 del Código de Enjuiciamiento Civil, el apelante no sólo tiene el deber de probar que se ha cometido error sino de que ha habido perjuicio.

Inspección Ocular—Discreción Judicial.—La concesión por la corte de una inspección ocular en el sitio donde ocurriera el accidente, es una cuestión que descansa en la sana discreción de la corte sentenciadora.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. José R. Freyre.*

Abogado de la apelada: *Sr. José de Diego.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

En la carretera de Yauco a Mayagüez se volcó un automóvil, resultando muerto Arturo Rubio Cuebas. Alegaron los demandantes que eran los padres y herederos del referido

Arturo Rubio Cuebas y que la muerte de su hijo se debió
a la negligencia de la demandada, la "Garage Mayagüez,
Inc.," o de su *chauffeur* Julio Camacho; que la demandada
es una corporación que arrienda o alquila automóviles, y
que el contrato particular celebrado en este caso consistía
en conducir a Rubio Cuebas y a otros de Mayagüez a San
Juan, saliendo el sábado día 7 de diciembre, 1912, y regre-
sando a Mayagüez antes de la noche del domingo 8 de diciem-
bre, 1912.

Varios fueron los actos de negligencia que en la demanda
se imputaron a la demandada. Establecida la contienda liti-
giosa, se celebró el juicio del caso y la corte, a moción de
la demandada, dictó sentencia sobreseyendo el caso (*non-
suit*), siendo esta acción tomada por la corte el principal
error que ha sido alegado en esta apelación.

Una de las teorías de negligencia en que más han insis-
tido los demandantes, fué el haber sido negligente la corpo-
ración demandada al elegir su *chauffeur,* Julio Camacho,
quien, según se alega, era un joven sin experiencia suficiente.
Los demandantes no solamente no probaron esta alegación,
sino que por el contrario sus mismos testigos acreditan que
el referido *chauffeur* era un conductor cuidadoso como otro
cualquiera, y que manejaba la máquina tan bien como podía
esperarse y a satisfacción de los mismos.

En la demanda se insistía algo en el hecho de haber de-
jado la demandada de poner de regreso a sus pasajeros en
Mayagüez en la fecha ofrecida, pero, como fácilmente es de
imaginarse, esta falta no tenía en absoluto ninguna relación
legal con el hecho de tener lugar el accidente.

Se alegó que existían varios defectos en la máquina, pero
no se probó la existencia de ninguno de ellos. De igual modo
fracasó la prueba en cuanto a la debilidad física de dicho
*chauffeur* como se alega en la demanda. Por el contrario,
la debilidad temporal de dicho *chauffeur* se debió a las con-
diciones especiales en que se emprendió y llevó a cabo el
viaje por los pasajeros mismos. Con muy cortos ratos de

descanso, estuvo el *chauffeur* sin descansar desde la fecha en que salió de Mayagüez hasta que ocurrió el accidente, o sea unas veintiocho horas después.

Otro fundamento de negligencia es el desconocimiento del camino que se atribuye al *chauffeur.* Este desconocimiento no se probó aparte de que tampoco se ha demostrado que tuviera alguna relación con la causa del accidente, y además quedó establecido por la prueba que el *chauffeur* salió de Yauco de mala gana y contra su gusto, por la noche a instancia y exigencia especial de Arturo Rubio Cuebas, o sea la persona que luego fué muerta. En resumen, ninguno de los actos constitutivos de negligencia alegados en la demanda quedó establecido por la prueba.

Los apelantes ante este tribunal, sin demostrar que la teoría sustentada por ellos en la corte inferior era semejante, han tratado de invocar la doctrina de *res ipsa loquitur,* en la suposición que hacen en esta corte de que la demandada era una porteadora pública (*common carrier*). Para los fines de este caso no resolveremos ahora si cuando se alegan actos particulares de negligencia puede un demandante fundarse en una presunción general de negligencia como la que está envuelta en la doctrina de *res ipsa loquitur.* La cuestión es, por tanto, si la demandada era tal porteadora que pudiera invocarse contra ella la máxima anterior.

Refiere la demanda que la demandada era una empresa de automóviles, con garage anexo, y que se dedicaba al arrendamiento o alquiler de automóviles para viajes a cuantas personas lo solicitaban, suministrando dicha empresa para el manejo y dirección de dichas máquinas sus empleados, sirvientes o agentes; y en la contestación se admitió la alegación, pero también mostraba la demanda un contrato especial de transporte, y como lo que se afirma en una alegación debe considerarse en el sentido más estricto en contra del que la formula, no vemos que se haya hecho ninguna alegación de que la demandada era una porteadora pública. La tentativa de la demanda por imputar los actos especí-

ficos de negligencia milita en contra de tal teoría. Además,
la demanda mostraba que la demandada tenía un garage
y la prueba demostró que el conductor del automóvil, a ins-
tancia y solicitud de los pasajeros, no solamente los llevó
a San Juan, sino que los paseó de un lado para otro por
las calles de dicha ciudad y a petición de los mismos demoró
el viaje. ·

Creemos que tanto de la demanda como de la prueba
apereció que la ocupación de la demandada, como sucede
generalmente con los garages, era semejante a la de un em-
presario de coches y que el contrato en este caso era la en-
trega ordinaria de una cosa en alquiler (*bailment for hire*).
Bajo estas circunstancias sostienen las autoridades que la
responsabilidad a saber, la de un empresario de coches, es
tener un cuidado ordinario. *Stanley* v. *Steele,* 69 L. R. A.
561, 77 Conn. 688, en cuyo .caso se revisan las autoridades;
*McGregor* v. *Gill,* 108 A. S. R. 919, 114 Tenn. 524; *Copeland*
v. *Draper,* 34 A. S. R. 315; *J. Edward Meyers* v. *Tri-State
Automobile Co.,* 44 L. R. A. (N. S.) 113, en el cual un ga-
rage de automóviles que alquila automóviles se considera
igual que una empresa de coches; *Tront* v. *Watkins Livery
& Undertaking Co.,* 130 S. W. 136; *Forbes* v. *Reinman,* 51
L. R. A. (N. S.) 1165.

Cuando el porteador es un ferrocarril, tranvía urbano,
buque de vapor, diligencia, o persona dedicada al servicio
público que se ofrece a recibir a todo el que se presente, se
requiere el mayor grado de cuidado y frecuentemente es
aplicada la máxima de *res ipsa loquitur,* por la teoría de que
teniendo dichos porteadores el gobierno y conociendo el me-
canismo del aparato y el camino, están en condiciones de
poder dar cuenta del accidente, y por tanto la ley les impone
el deber de tener tal conocimiento. *Stokes* v. *Saltonstall,*
13 Petters 181; *McGinn* v. *New Orleans Railroad & Light
Co.,* 13 L. R. A. (N. S.) 601, y notas; *Treadwell* v. *Whittier,*
80 Cal. 574, 5 L. R. A. 498; *Hegeman* v. *Western Railroad
Corporation,* 13 N. Y. 9, 64 A. D. 517; *Holbrook* v. *Utica*

*& Schenectady R. R. Co.,* 12 N. Y. 236, 64 A. D. 502. Y el principio se ha hecho extensivo a un automóvil que va visitando puntos de interés, 35 L. R. A. (N. S.) 658; al dueño de un coche de alquiler, *Bonce* v. *Dubuque Street Ry. Co.,* 36 A. R. 221 y a una compañía de coches-automóviles, *Van Hoefen* v. *Columbia Taxicab Co.,* 162 S. W. 694, teniéndose siempre presente la diferencia de si el demandado representó ser un porteador público; de otro modo la regla que exige al demandante asumir el peso de la prueba permanece intacta.

Otra cuestión a la cual han llamado la atención las autoridades, es que los empresarios de coches y garages de automóviles no solamente arriendan las máquinas con los conductores, sino que también las alquilan sin éstos, y realizan otras varias cosas que demuestran un contrato privado de arrendamiento. Ni de la demanda ni de la prueba apareció que éste fuera un caso en que pudiera aplicarse la máxima *res ipsa loquitur.*

La prueba en realidad demostró un acto de negligencia por parte del *chauffeur* de la demandada, el cual según toda probabilidad fué la causa eficiente del accidente. La empresa se comprometió a llevar sus pasajeros a San Juan y traerlos a Mayagüez, pero en San Juan los pasajeros no dejaron tranquilo al *chauffeur,* y desde el sábado por la noche a eso de las 10 hasta el lunes por la madrugada, como a las dos, tanto los pasajeros como el *chauffeur* tuvieron muy poco descanso, de modo que cuando los viajeros salieron para Yauco casi todos se encontraban rendidos por el sueño. Los pasajeros sabían que el *chauffeur* había estado haciendo un esfuerzo continuo y que sus fuerzas se encontraban un poco agotadas, a pesar de lo cual insistieron, particularmente el finado, en salir por la noche, hallándose el *chauffeur* en este estado de agotamiento de fuerzas. Si fué negligente el *chauffeur,* el fenecido fué también culpable de negligencia contributoria. Creemos, en vista de esta negligencia contributoria que la corte tuvo razón al ordenar el

sobreseimiento del caso (*nonsuit*) por cualquier fundamento de negligencia que estuviera justificado por los hechos desarrollados en el juicio.

Se alegaron otros cuatro señalamientos de error. El primero de éstos consistió en no haber permitido la corte declarar al testigo de la demandada, Fernando Cuebas, si había hecho una manifestación distinta ante el juez municipal. Según refieren los autos, el objeto de la pregunta era refrescar la memoria del testigo. La razón que ahora se aduce es que una parte tiene derecho a contradecir su propio testigo de acuerdo con el artículo 156 de la Ley de Evidencia. No se hizo constar debidamente qué objeto tenía la pregunta al indicar al testigo los detalles de sus manifestaciones anteriores que se alega son incompatibles. Las declaraciones que se trataron de poner de manifiesto no eran contradictorias y el objeto de la pregunta fué expresado equivocadamente; de otro modo era una declaración puramente de referencia e incompetente.

A uno que se alegó era un perito, se le preguntó si por el conocimiento que tenía como *chauffeur*, y por haber visto el automóvil, el camino, y todo lo demás, podía explicar cómo había ocurrido el accidente. El testigo no acreditó ser un perito y la pregunta estaba sujeta a ser impugnada por no expresar hechos concretos probados en el juicio en forma hipotética que hiciera procedente la opinión de un perito.

El tercer señalamiento de error consistió en no haber permitido la corte a un testigo que declarara sobre las manifestaciones hechas por el *chauffeur* Camacho respecto a su propia negligencia. Esto tal vez fué un error, pues las admisiones hechas por un empleado de un demandado son pertinentes y competentes, y constituyen una excepción a la regla relativa a las declaraciones de referencia (*hearsay*), aun cuando el empleado esté en la corte dispuesto a declarar. 16 Cyc. 1005; *Geylin* v. *de Villeroi*, 2 Houston (Del.) 311; *Kelly* v. *Ning Yung Benevolent Assn.*, 2 Cal. App. 460; *Phe-*

*nix Mut. L. Ins. Co.* v. *Clark,* 58 N. H. 164. Creemos, sin embargo, que los apelantes no probaron ningún perjuicio.

El artículo 142 del Código de Enjuiciamiento Civil prescribe que

"En cualquier estado de un pleito la corte no tomará en cuenta algún error o defecto en las alegaciones o procedimientos que no afecten a lo esencial de los derechos de las partes, y no se revocará o invalidará ningún fallo por razón de dicho error o defecto."

De acuerdo con un artículo semejante las cortes de California, así como otras cortes, han declarado que el apelante no solamente tiene el deber de probar que se ha cometido error, sino que ha habido perjuicio. *Coonan* v. *Lowenthal,* 129 Cal. 197, 61 Pac. 940; 3 Cyc. 387; *Taylor* v. *Boughner, Jr., et al.,* 16 W. Va. 332. Al tratar esta cuestión, la Corte Suprema de los Estados Unidos se expresa en los siguientes términos en el caso de *Cunningham* v. *Springer,* 204 U. S. 647:

"Estas excepciones demuestran la importancia de una estricta aplicación del principio de que la parte que excepciona debe hacer constar que en el juicio ha tenido lugar un error que le perjudica, para que pueda estar justificada una corte de apelación en modificar el veredicto."

La pregunta se le hizo al testigo hacia la terminación del juicio, después de haber hecho los demandantes varias tentativas distintas para probar la negligencia de la demandada. Atendidas estas circunstancias creemos que los demandantes tenían el deber de mostrar que la declaración propuesta era esencial y pertinente a las cuestiones alegadas en la demanda y no meramente acumulativa de la otra declaración que se pretendió ofrecer. Es muy probable que el *chauffeur* lamentara el hecho de tener que salir de Yauco, abatido como estaba; pero si los demandantes en aquel estado del juicio trataban de probar algún otro acto de negligencia, debieron haber hecho una proposición más específica para convencer a la corte inferior y a este tribunal de que la prueba rechazada tenía alguna relación verdadera con el caso.

El cuarto señalamiento de error fué la negativa de la corte a hacer una inspección ocular del sitio donde ocurrió el accidente.  Esta era una cuestión que pertenecía a la sana discreción de la corte, y no vemos que se haya abusado de dicha discreción.

Debe confirmarse la sentencia.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.